**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **AUDREY CAULKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **FIRST LEGACY ASSET** | ) |
| **MANAGEMENT, LLC.,** | ) |
| **and MARK KASPERCZYK,** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT**

NOW COMES the Plaintiff, AUDREY CAULKINS, by and through her attorneys, SMITHMARCO, P.C., and for her Complaint against the Defendants, FIRST LEGACY ASSET MANAGEMENT, LLC., and MARK KASPERCZYK, Plaintiff states as follows:

### I.  PRELIMINARY STATEMENT

1.  This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.  JURISDICTION & VENUE

2.  Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.  PARTIES

4.  AUDREY CAULKINS, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Westminster, County of Adams, State of Colorado.

5.  The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to ACE (hereinafter, "the Debt").

6. The Debt was for a payday loan, the funds of which were used for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. FIRST LEGACY ASSET MANAGEMENT, LLC.,, (hereinafter, "FLAM") is a business entity engaged in the collection of debt within the State of Colorado.  Defendant is registered as a limited liability company in the State of New York.

9. The principal purpose of FLAM's business is the collection of debts allegedly owed to third parties.

10. FLAM regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, FLAM sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, FLAM acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, FLAM acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. Defendant, MARK KASPERCZYK, (hereinafter "Kasperczyk") is an individual who, upon information and belief, was at all relevant times residing in the State of New York.

15. Upon information and belief, at all relevant times, Kasperczyk was acting as an Owner, Officer, Director, Manager and/or agent of FLAM.

16. Upon information and belief, at all relevant times, Kasperczyk was acting as the CEO and FLAM.

17. Upon information and belief, at all relevant times, Kasperczyk was vested with the responsibility to manage FLAM.

18. Upon information and belief, at all relevant times, Kasperczyk was responsible for the management and/or affairs of FLAM.

19. Upon information and belief, at all relevant times, Kasperczyk was responsible for the day to day operations of FLAM.

20. Upon information and belief, at all relevant times, Kasperczyk was responsible for the supervision of FLAM's employees, agents and/or representatives that were attempting to collect debts.

21. Upon information and belief, at all relevant times, Kasperczyk was responsible for the management of FLAM's employees, agents and/or representatives that were attempting to collect debts.

22. As such, at all relevant times, Kasperczyk acted as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

### IV.    ALLEGATIONS

#### COUNT I:
#### AUDREY CAULKINS v. FIRST LEGACY ASSET MANAGEMENT, LLC

23. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

24. In or around September 2012, Defendant initiated a telephone call to Plaintiff in an attempt to collect the Debt.

25. At the time Defendant initiated the aforesaid telephone call to Plaintiff in an attempt to collect the Debt, Defendant left a voicemail message for Plaintiff.

26. At no time during the course of the aforesaid voicemail message did Defendant state it was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

27. During the course of the aforesaid voicemail message, Defendant stated it was calling to inform Plaintiff regarding a civil matter that will soon be forwarded to the physical address attached with Plaintiff's telephone number.

28. Defendant further stated that Plaintiff or Plaintiff's attorney must contact Defendant immediately.

29. Defendant then provided Plaintiff with a telephone number that Plaintiff was to contact.

30. The telephone number Defendant provided to Plaintiff was Defendant's telephone number.

31. Defendant further provided Plaintiff with a putative docket number.

32. Defendant told Plaintiff to refer to the docket number when contacting Defendant.

33. At no time during the course of the aforesaid voicemail message did Defendant's duly authorized representative provide Plaintiff with information relative to Defendant's identity.

34. Plaintiff ascertained the aforesaid voicemail message was left by Defendant as the telephone number Defendant informed Plaintiff to contact to return Defendant's telephone call was Defendant's telephone number.

35.     Plaintiff heard the contents of the voicemail message left by Defendant.

36.     Defendant's representations to Plaintiff in the aforesaid voicemail message had the effect of conveying to an unsophisticated consumer that Defendant had filed a lawsuit against Plaintiff relative to the Debt.

37.     At the time Defendant made the aforesaid representations to Plaintiff, Defendant had not filed a lawsuit against Plaintiff relative to the Debt.

38.     Defendant's representations to Plaintiff that it had filed a lawsuit against Plaintiff relative to the Debt were false, deceptive and/or misleading given at the time Defendant made the aforesaid representations no lawsuit had been filed against Plaintiff relative to the Debt.

39.     Defendant's representations to Plaintiff that it had filed a lawsuit against Plaintiff relative to the Debt misrepresented the character, nature and/or legal status of the Debt given at the time Defendant made the aforesaid representations no lawsuit had been filed against Plaintiff relative to the Debt.

40.     Defendant has not filed a lawsuit against Plaintiff for the Debt.

41.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the Debt.

42.     Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the Debt.

43.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the Debt.

44.     In or around September 2012, Plaintiff engaged in a telephone conversation with Defendant wherein Defendant attempted to collect the Debt from Plaintiff.

45. During the course of the aforesaid telephone call between the parties, Defendant told Plaintiff if she did not pay the Debt then Plaintiff would lose her commercial driver's license.

46. At the time Defendant made the aforesaid threat to Plaintiff, Plaintiff had a commercial driver's license.

47. At the time Defendant made the aforesaid threat to Plaintiff, Plaintiff required her commercial driver's license to carry out her duties at her place of employment.

48. Upon information and belief, Defendant had neither the power nor the authority to ensure Plaintiff's commercial driver's license would be revoked.

49. Defendant's threat to Plaintiff that if she did not pay the Debt then she would lose her commercial driver's license was false, deceptive and/or misleading given that, upon information and belief, Defendant had neither the power nor the authority to ensure Plaintiff's commercial driver's license would be revoked.

50. Defendant's threat to Plaintiff that if she did not pay the Debt then she would lose her commercial driver's license was a representation made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant relative to the Debt.

51. During the course of the aforesaid telephone conversation between the parties, Defendant further told Plaintiff if she did not pay the Debt then Plaintiff would face criminal charges.

52. Defendant further informed Plaintiff that she would face charges related to fraud if she did not pay the Debt.

53. Defendant also told Plaintiff if she did not pay the Debt then Defendant would take further action against Plaintiff that neither Plaintiff nor her attorney could stop.

54. Defendant's representation to Plaintiff that she would face criminal and fraud charges had the effect of conveying to an unsophisticated consumer that Plaintiff had engaged in criminal conduct with respect to the Debt.

55. Plaintiff has not engaged in criminal conduct with respect to the Debt.

56. Defendant's representation that Plaintiff had engaged in criminal and/or fraudulent conduct was false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct relative to the Debt.

57. Defendant's representation that Plaintiff could face criminal and/or fraudulent charges relative to the Debt misrepresented the character, status and/or legal nature of the Debt.

58. Defendant's representations that Plaintiff could face criminal and fraudulent charges were statements made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

59. In or around September 2012, subsequent to the aforesaid telephone conversation between the parties, Plaintiff and Defendant engaged in additional telephone conversations wherein Defendant attempted to collect the Debt.

60. During the course of the aforesaid telephone conversations, Plaintiff informed Defendant that she believed it was not able to revoke her commercial driver's license if she did not pay the Debt.

61. Defendant responded to Plaintiff by reiterating that if she did not pay the Debt then Defendant would revoke her commercial driver's license.

62. In or around September 2012, and on multiple occasions therein, Plaintiff engaged in telephone conversations with Defendant wherein Plaintiff asked Defendant for its mailing address.

63. During the course of the aforesaid telephone conversations, Defendant provided Plaintiff with a P.O. Box address.

64. During the course of the aforesaid telephone conversations, Plaintiff asked Defendant to provide her with its physical mailing address.

65. Plaintiff further told Defendant that she wanted to send a correspondence to Defendant via certified mail and that she required Defendant's physical mailing address so that she could send a correspondence to Defendant via the aforesaid method.

66. On multiple occasions, Defendant refused to provide Plaintiff with its physical mailing address.

67. Defendant's conduct in refusing to provide Plaintiff with its physical mailing address, thus preventing Plaintiff from sending correspondence to Defendant via the aforesaid method was unfair and/or unconscionable.

68. During the course of the aforesaid time period, during a telephone conversation between Plaintiff and Defendant, Defendant told Plaintiff that it had spoken with Plaintiff's step-father and that Plaintiff's step-father was going to pay the Debt on Plaintiff's behalf.

69. Defendant then informed Plaintiff to contact her step-father to obtain his debit card information so that Plaintiff could provide Defendant with her step-father's debit card information.

70. Plaintiff's step-father never informed Defendant that he would pay the Debt on Plaintiff's behalf.

71. Subsequent to Plaintiff's telephone conversation with Defendant, Plaintiff asked her step-father if he represented to Defendant that he would pay the Debt on Plaintiff's behalf.

72. Plaintiff's step-father told Plaintiff that he never represented to Defendant that he would pay the Debt on Plaintiff's behalf.

73. Defendant's representations to Plaintiff that Plaintiff's step-father informed Defendant that he would pay the Debt on Plaintiff's behalf were false, deceptive and/or misleading given that Plaintiff's step-father never informed Defendant of the aforesaid information.

74. Defendant's representations to Plaintiff that Plaintiff's step-father informed Defendant that he would pay the Debt on Plaintiff's behalf were statements made by Defendant to Plaintiff to attempt to coerce Plaintiff to make a payment to Defendant.

75. In or around September 2012, Defendant initiated a telephone call to Plaintiff's step-father in a further attempt to collect the Debt.

76. Defendant engaged in a telephone conversation with Plaintiff's step-father wherein Defendant informed Plaintiff's step-father that Plaintiff owed the Debt.

77. Defendant also told Plaintiff's step-father that if Plaintiff did not pay the Debt then Plaintiff would lose her commercial driver's license.

78. Defendant further told Plaintiff's step-father that if Plaintiff did not pay the Debt then Plaintiff could be charged with a crime.

79. Plaintiff's step-father informed Plaintiff of the contents of the aforesaid telephone conversation.

80. Plaintiff did not consent to Defendant communicating with third-parties.

81. In or around September 2012, Defendant initiated a telephone call to Plaintiff's ex-boyfriend's parents' residence in a further attempt to collect the Debt.

82. Defendant engaged in a telephone conversation with Plaintiff's ex-boyfriend's parent(s) wherein Defendant informed the aforesaid third-parties that Plaintiff owed the Debt.

83. Defendant further told Plaintiff's ex-boyfriend's parent(s) that if Plaintiff did not pay the Debt then Plaintiff could be charged with a crime.

84. Defendant further told Plaintiff's ex-boyfriend's parent(s) that if Plaintiff did not pay the Debt then Plaintiff could be charged with fraud.

85. Defendant also told Plaintiff's ex-boyfriend's parent(s) that Plaintiff's commercial driver's license may have already been revoked as a result of Plaintiff not having paid the Debt.

86. Plaintiff's ex-boyfriend's parents informed Plaintiff of the contents of the aforesaid telephone conversation.

87. Again, Defendant's representations that Plaintiff had engaged in criminal and/or fraudulent conduct was false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct relative to the Debt.

88. Again, Defendant's representations that Plaintiff could face criminal and/or fraudulent charges relative to the Debt misrepresented the character, status and/or legal nature of the Debt.

89. Again, Defendant's representations that Plaintiff could face criminal and fraudulent charges were statements made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

90. Defendant's representation to Plaintiff that her commercial driver's license may have already been revoked as a result of Plaintiff not having paid the Debt was false, deceptive and/or misleading given that, at the time Defendant made the aforesaid representation, Plaintiff's commercial driver's license had not been revoked.

91. Defendant's representation to Plaintiff that her commercial driver's license may have already been revoked as a result of Plaintiff not having paid the Debt was a representation made by Defendant to Plaintiff in an attempt to coerce Plaintiff into making a payment to Defendant relative to the Debt.

92. In its attempts to collect the Debt, FLAM violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

    b. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

    c. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    d. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    e. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

    f. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

    g. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    h. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

    i. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

    j.    Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

93.    As a result of FLAM's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, AUDREY CAULKINS, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, FIRST LEGACY ASSET MANAGEMENT, LLC , as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs; and,

    d.    Any other relief deemed appropriate by this Honorable Court.

## COUNT II:
## AUDREY CAULKINS v. MARK KASPERCZYK

94.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

95.    In its attempts to collect the Debt allegedly owed by Plaintiff, Kasperczyk violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a.    Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

    b.    Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

    c.    Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    d.    Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

e. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

f. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

g. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

h. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

i. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

j. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

96. As a result of Kasperczyk's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, AUDREY CAULKINS, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, MARK KASPERCZYK, as follows:

a. All actual compensatory damages suffered;

b. Statutory damages of $1,000.00;

c. Plaintiff's attorneys' fees and costs; and,

d. Any other relief deemed appropriate by this Honorable Court.

## V. JURY DEMAND

97. Plaintiff hereby demands a trial by jury on all issues so triable.

14

                                                  Respectfully submitted,
                                                  **AUDREY CAULKINS**

                                 By:   s/ David M. Marco
                                                      Attorney for Plaintiff

Dated: February 11, 2013

David M. Marco (Atty. No.: 6273315)
SMITHMARCO, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone:  (312) 546-6539
Facsimile:  (888) 418-1277
E-Mail:      dmarco@smithmarco.com