IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00366-RPM-KLM

AUDREY CAULKINS,

      Plaintiff,

v.

FIRST LEGACY ASSET MANAGEMENT, LLC

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's **Motion for Default Judgment** [#23] (the "Motion").[1]  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion is referred to this Court for recommendation [#5].  Plaintiff seeks entry of default judgment against Defendant First Legacy Asset Management, LLC.  Pursuant to Fed. R. Civ. P. 55(a), the Clerk of Court entered default against Defendant on June 6, 2013 [#21].  Defendant has not responded to Plaintiff's Complaint or the present Motion.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#23] be **GRANTED in part** as stated herein.

## I. BACKGROUND

**A.**     **Procedural History**

_____

[1]  [#23] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this order.

Plaintiff initiated this lawsuit on February 11, 2013, alleging violations of the Fair Debt Collection Practices Act ("FDCPA").   *Compl.* [#1].   Plaintiff obtained service on Defendant on April 23, 2013.   *Aff. of Service* [#13].   Defendant failed to respond to Plaintiff's Complaint.

A Scheduling/Planning Conference was initially set for June 3, 2013.   *Order* [#6]. The Court reset the Scheduling Conference for July 15, 2013.   *Minute Order* [#16].   On June 5, 2013, Plaintiff filed a Motion for Entry of Default. [#20].   The Clerk of Court entered default against Defendant on June 6, 2013. *Entry of Default* [#21].   The Court vacated the Scheduling Conference on June 10, 2013.   *Minute Order*  [#22].   Plaintiff filed the Motion on July 7, 2012.   *Motion* [#23].   Defendant failed to file a response to the Motion.

## B.   Factual Allegations

In or around September 2012, Defendant First Legacy Asset Management, a business entity engaged in the collection of debt within the State of Colorado, called Plaintiff to attempt to collect a debt.   *Am. Compl.* [#7] at 4.   A representative of Defendant left a voicemail message to inform Plaintiff regarding a civil matter that would soon be forwarded to the physical address attached to Plaintiff's phone number.   *Id.*   The representative provided Plaintiff with Defendant's telephone number, adding that Plaintiff or his attorney must call the number immediately.   *Id.*   At no point did Defendant's representative provide Plaintiff with information concerning Defendant's identity.   *Id.*  After Plaintiff heard the voicemail message, she believed that Defendant had filed a lawsuit against Plaintiff regarding the debt.   *Id.* at 5.   Defendant never filed a lawsuit against Plaintiff regarding the debt.   *Id.*   Plaintiff alleges Defendant had no intention of doing so. *Id.*

-2-

During the same month, Plaintiff spoke with a representative of Defendant on the phone who attempted to collect the debt from Plaintiff. *Id.* During the call, Defendant's representative told Plaintiff that if she did not pay the debt, she "would lose her commercial driver's license." *Id.* Plaintiff alleges Defendant and its representative had neither the power nor authority to revoke Plaintiff's driver's license. *Id.* Defendant's representative further told Plaintiff that if she did not pay the debt she would face criminal charges and Defendant would "take further action against Plaintiff that neither Plaintiff nor her attorney could stop." *Id.* Subsequent telephone conversations occurred where Defendant attempted to collect the debt. *Id.* at 7. Plaintiff told Defendant's representative she believed Defendant was not able to revoke her commercial driver's license if she did not pay the debt. *Id.* Defendant's representative responded by reiterating that if she did not pay the debt then Defendant would revoke her commercial driver's license. *Id.* When Plaintiff asked Defendant's representative for Defendant's mailing address, the representative provided its P.O. Box address. *Id.* at 8. Plaintiff asked for Defendant's physical mailing address so that she could send correspondence to Defendant via certified mail. *Id.* Defendant's representative refused to provide Plaintiff with Defendant's physical mailing address. *Id.*

Defendant's representative told Plaintiff that Defendant had spoken with Plaintiff's stepfather who was going to pay the debt on Plaintiff's behalf. *Id.* Plaintiff's stepfather told Plaintiff that he never represented to Defendant that he would pay the debt on Plaintiff's behalf. *Id.* Defendant's representative then called Plaintiff's stepfather seeking payment regarding the debt and informed him that he could be charged with a crime if Plaintiff did not pay. *Id.* Defendant's representative also initiated a telephone call to Plaintiff's ex-

boyfriend's parents in a further attempt to collect the debt.  *Id.* at 9.  Defendant's representative told them that if Plaintiff did not pay the debt then Plaintiff could be charged with a crime.  *Id.* at 9-10.

Based on the phone calls cited above, Plaintiff claims that Defendant violated the FDCPA.  *See id.* at 11.  More specifically, Plaintiff avers that Defendant violated: (1) 15 U.S.C. § 1692b(2) by communicating with people other than Plaintiff for the purpose of acquiring location information about her and stating that she owes a debt; (2) 15 U.S.C. § 1692d(6) by calling Plaintiff without meaningful disclosure of its identity; (3) 15 U.S.C. § 1692e by using false, deceptive, misleading, and unfair or unconscionable means to collect or attempt to collect the debt; (4) 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of the debt; (5) 15 U.S.C. § 1692e(5) by threatening to take action that cannot legally or is not intended to be taken; (6) 15 U.S.C. § 1692e(7) by falsely representing or implying that Plaintiff committed a crime or other conduct in order to disgrace her; (8) 15 U.S.C. § 1692e(10) by using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning Plaintiff; (9) 15 U.S.C. § 1692f by using unfair and/or unconscionable means to collect or attempt to collect a debt; and (10) the FDCPA by failing to comply with its provisions and acting deceptively.  *Id.*

Plaintiff alleges that she has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish, and emotional distress.  *Id.*  Plaintiff seeks judgment against Defendant for all actual compensatory damages suffered, statutory damages of $1,000.00, Plaintiff's attorneys' fees and costs, and any other relief deemed appropriate. *Id.*

## II.  ANALYSIS

Pursuant to Fed. R. Civ. 55, default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendant failed to respond to Plaintiff's Complaint.  After a proper entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment."  *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (citations omitted).  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Id.* at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

### A.  Jurisdiction

In determining whether the entry of default judgment is warranted here, the Court must first consider whether it may exercise subject matter and personal jurisdiction over the parties and the dispute.  *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-1203 (10th Cir. 1986).  The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action."  *Williams*, 802 F.2d at 1203.

### 1.  Subject Matter Jurisdiction

Plaintiff asserts that the Court has subject matter jurisdiction over this lawsuit based on federal question jurisdiction.  *See Am. Compl.* [#7] at 1.  Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiff's cause of action arises under 15 U.S.C. § 1692 of the FDCPA, which is a federal statute.  *Am. Compl.* [#7] at 1.  Pursuant to 15 U.S.C. § 1692k(d), a plaintiff may pursue a civil cause of action "in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs."

Plaintiff filed this action on February 11, 2013, which is less than one year after her receipt of the September 2012 phone calls.  *See generally Compl.* [#1]; *Am. Compl.* [#7]. The action is therefore timely, and as Plaintiff brings the lawsuit pursuant to the FDCPA, the action arises pursuant to a federal statute.  Accordingly, the Court **recommends** finding that the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

### 2.    Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction.  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials."  *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773.  As further explained below, in making a determination on a motion for default judgment, the Court accepts the well-pled allegations of Plaintiff's Amended Complaint as true.  However, this deferential pleading standard does not extend to statements of legal conclusion couched as fact.  *Cf. Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010) (citations omitted)

("While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant, . . . it accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

The Court must first address the adequacy of service in making its determination as to whether it has personal jurisdiction over Defendant. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). Plaintiff's Amended Complaint identifies Defendant as a limited liability company. *See Am. Compl.* [#7] at 2. Therefore, the Court analyzes the adequacy of service in the context of Fed. R. Civ. P. 4(h), which establishes the requirements for service of a corporation, partnership, or association. Rule 4(h) provides that service on a corporation, partnership, or association is adequate if effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h)(1)(B). On May 21, 2013, Plaintiff filed a return of service document demonstrating that a private process server personally delivered the summons and complaint to the Chief Executive Officer of Defendant on April 23, 2013. *See Aff. of Service* [#13] at 1. Therefore, the Court **recommends** finding that Plaintiff has obtained adequate service and satisfied Fed. R. Civ. P. 4(h).

"Where a court possesses subject matter jurisdiction, . . . the parties may waive lack of personal jurisdiction." *Gardner v. City & Cnty. of Denver*, 671 F. Supp. 713, 714 (D. Colo. 1987) (citation omitted). Pursuant to Fed. R. Civ. P. 12(h)(1), a party may waive a defense premised on lack of personal jurisdiction by "failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . . ." Fed. R. Civ. P. 12(h)(1). In the Amended Complaint, Plaintiff's only assertion in support of an exercise of personal

jurisdiction over Defendant is that Defendant conducts business in Colorado.[2]  [#7] at 2.

Despite the fact that Defendant did not raise personal jurisdiction as a defense, "[d]efects

in personal jurisdiction . . . are not waived by default when a party fails to appear or to

respond." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (citing *V.T.A.,*

*Inc. v Airco, Inc.*, 597 F.2d 220, 225 (10th Cir. 1979)).

> Thus, when entry of a default judgment is sought against a party who has
> failed to plead or otherwise defend, the district court has an affirmative duty
> to look into its jurisdiction both over the subject matter and the parties.  In
> reviewing its personal jurisdiction, the court does not assert a personal
> defense of the parties; rather, the court exercises its responsibility to
> determine that it has the power to enter the default judgment.

*Id.* at 1203.

Plaintiff alleges Defendant is registered as a limited liability company in the State of

New York. *Am. Compl.* [#7] at 2.  She further alleges Defendant engages in the collection

of debt within the State of Colorado.  *Id.*  As a court of limited jurisdiction, this Court may

only exercise jurisdiction over nonresident defendants if: (1) the long-arm statute of

Colorado permits personal jurisdiction in this case; and (2) the exercise of personal

jurisdiction in Colorado comports with the Due Process Clause of the United States

Constitution.  *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070

(10th Cir. 2008).  The Supreme Court of Colorado interprets Colorado's long-arm statute

"to confer the maximum jurisdiction permitted by the due process clauses of the United

States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187,

1193 (D. Colo. 2005).  Therefore, a due process analysis of jurisdiction in this case will also

---

[2]  Plaintiff indicates that she resides in Colorado and that Defendant contacted her seeking
to collect the debt.  *Am. Compl.*  [#7] at 1, 4.

satisfy Colorado's long-arm statute.

The Due Process Clause requires that the Court conduct a two-step analysis of personal jurisdiction.  First, the Court must examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being hailed into court there."  *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation mark omitted).  Second, if the defendant has sufficient contacts, the Court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.  *Id.* (citation and some quotation marks omitted).

### a.    Minimum Contacts

The "minimum contacts" requirement of due process may be met in two ways, through either the showing of the existence of general or specific jurisdiction.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir.1996).

> The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).

*Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004).

### i.    General Jurisdiction

General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is not related to the defendant's activities within the state.

*Trierweiler*, 90 F.3d at 1533 (citation omitted).  Here, there is no indication that Defendant had continuous and systematic contact with the forum state, Colorado.  Plaintiff alleges Defendant is incorporated pursuant to the laws of the State of New York.  *Am. Compl.* [#7] at 2.  Plaintiff does not allege where Defendant's principal place of business is located. *See generally Am. Compl.* [#7].  Plaintiff's private process server personally delivered the summons to an officer of Defendant at "77 Robert Drive, Lancaster, N.Y."  *See Aff. of Service* [#13].   The only allegation Plaintiff makes about Defendant's contacts with Colorado is that Defendant "engage[s] in the collections of debt within the State of Colorado."  *See id.* at 2.  Based on the Amended Complaint, the Court cannot determine whether Defendant collected a debt or debts in Colorado once, hundreds of times, or more.

Therefore, Plaintiff fails to provide any allegations that would lead the Court to believe that Defendant's contacts with the forum state of Colorado have been "continuous and systematic."  Because Plaintiff has not established that Defendant has "continuous and systematic general business contacts" with Colorado, an exercise of general personal jurisdiction over Defendant is improper.  *See Benton v. Cameco*, 375 F.3d 1070, 1081 (10th Cir. 2004).

### ii.    Specific Jurisdiction

To determine whether specific jurisdiction over Defendant is appropriate, the Court must examine whether: (1) Defendant purposefully directed its activities at Colorado or its residents or acted in some other way by which it purposefully availed itself of the benefits and protections of conducting business in Colorado, and (2) Plaintiff's claims arise out of or relate to Defendant's forum-related activities.  *Impact Prods.*, 341 F. Supp. 2d at 1190.

Here, Plaintiff alleges that the following occurred in violation of the FDCPA: (1) in

September 2012, she received a telephone call with a voicemail message stating Defendant's representative was calling regarding a civil matter that would soon be forwarded to Plaintiff and told Plaintiff that she or her attorney must contact Defendant immediately, *Am. Compl.* [#7] at 4; (2) she engaged in a second telephone conversation with Defendant's representative where Defendant threatened to revoke her commercial driver's license and told her she would face criminal charges, *id.* at 6; (3) she engaged in "additional telephone conversations" where Defendant attempted to collect the debt, *id.* at 7; (4) Defendant's representative provided Plaintiff, at her request, with Defendant's P.O. Box address, *id.* at 8; (5) Defendant's representative called Plaintiff's stepfather to inform him of Plaintiff's debt, *id.* at 9; and (6) Defendant's representative called Plaintiff's ex-boyfriend's parent(s) and informed them that Plaintiff owed the debt, *id.* at 9-10. "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (citations omitted) (finding that "ten-to-twenty scattered contacts alleged in negotiating a contract" did not constitute minimum contacts). However, a single letter or phone call to a forum may be enough to meet due process standards as long as that single contact creates a "substantial connection" with the forum. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (citing *Burger King*, 471 U.S. at 475).

Defendant, through its representative, contacted Plaintiff in Colorado to collect a debt, an act which is regulated by the FDCPA, a federal statute.[3]   "Because [Defendant's] correspondence is the nucleus of the alleged wrongful conduct rather than just an ancillary

---

[3] Plaintiff resides in Colorado. *Am. Compl.* [#7] at 1. Therefore, the Court finds it likely that Defendant's phone call to Plaintiff occurred while Plaintiff was in Colorado.

contact with the forum, it was reasonable [for Defendant] to have anticipated being hailed into court [in Colorado] on claims based upon the [phone calls]." *Russey v. Rankin*, 837 F. Supp. 1103, 1105 (D.N.M. 1993) (citations omitted) (holding that the District of New Mexico had personal jurisdiction over an out-of-state debt collector because the debt collector sent "one or more collection letters to a New Mexico resident when the cause of action [was] based upon that contact").   Furthermore, during telephonic communications, Defendant's representative threatened that Defendant would revoke Plaintiff's commercial driver's license and she would face criminal charges.   *Id.* at 6-7.   Plaintiff resides in Colorado and accordingly, any action taken against Plaintiff would likely occur in Colorado. *Id.* at 1; *see Bryner v. Mancini, Welch & Geiger LLP*, No. 2:09-CV-1060 TS, 2010 WL 1418882, at *3-4 (D. Utah Apr. 7, 2010) (noting the significance of the location of a defendant debt collector's threatened actions against a plaintiff when addressing personal jurisdiction over an out-of-state defendant).   Therefore, allegations that Defendant placed phone calls to Plaintiff which allegedly violated the FDCPA are "sufficient to show that Defendant purposefully directed [its] debt collection activities at [a] resident[] of [Colorado,] purposefully availed [itself] of the privilege of doing business in [Colorado,] and [P]laintiff's claims arose out of that Defendant's forum-related activities." *Vaile v. Nat'l Credit Works, Inc.*, No. CV-11-674-PHX-LOA, 2012 WL 1520120, at *5 (D. Ariz. Mar. 26, 2012) (holding allegations that Defendant repeatedly called Plaintiff and left voicemails that threatened to commence legal action sufficiently showed intentional acts "expressly aimed" toward resident by an out-of-state Defendant and that specific jurisdiction over Defendant was proper); *Weakley v. Redline Recovery Services, LLC*, 723 F. Supp. 2d 1341, 1344-1345 (S.D. Cal. 2010) ("Because individual Defendants Chates and Hardy, from Texas,

contacted Plaintiff at Plaintiff's military workplace, in California, by telephone to collect Plaintiff's alleged debt, Defendants have performed acts or transactions within the forum. . . . Defendants' communication with Plaintiff in California constitutes contacts sufficient to demonstrate that Defendants Chates and Hardy are subject to personal jurisdiction [in California]."); *Maloon v. Schwartz, Sweban & Slingbaum, L.L.P.*, 399 F. Supp. 2d 1108 (D. Haw. 2005) (holding an out-of-state debt collector was subject to personal jurisdiction where its contact with the forum was a debt collection letter that was the subject of Plaintiff's lawsuit); *Paradise v. Robinson & Hoover*, 883 F. Supp. 521 (D. Nev. 1995) (finding, in FDCPA case, personal jurisdiction over defendant based on plaintiff's allegation of a single debt collection letter being sent to the forum state); *Wensauer v. Martorella*, No. CIV-08-467-F, 2008 WL 4131112, at *1 (W.D. Okla. Aug. 29, 2008) (holding that the court had personal jurisdiction over an out-of-state debt collector because the debt collector allegedly sent letters to the plaintiff in Oklahoma in violation of the FDCPA). Accordingly, the Court **recommends** finding that it may exercise specific jurisdiction over Defendant.

### b.    Traditional Notions of Fair Play and Substantial Justice

Additionally, exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190. Regarding "traditional notions of fair play and substantial justice," courts consider:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).

First, the Court's exercise of jurisdiction over Defendant would not create an undue burden on Defendant. "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted). Therefore, requiring Defendant to travel from New York to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir.1998). Although Defendant likely made the alleged phone calls from New York, it made them to a Colorado resident. *See Am. Compl.* [#7] at 1. Plaintiff likely received them in Colorado. Therefore, any injury to Plaintiff occurred in Colorado and any threatened injury was threatened to occur in Colorado. Accordingly, Colorado has an important interest in providing a forum for Plaintiff to seek redress for her injuries.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute," *id.* at 1080 (quotations and citation omitted). In this case, Plaintiff could receive effective, albeit less convenient, relief in New York. However, Colorado is the most efficient forum to litigate this dispute because Plaintiff resides in Colorado, Plaintiff apparently received all communications from Defendant in Colorado, and the out-of-state Defendant has not responded to Plaintiff's Complaint or the present Motion. Therefore, the third and fourth

factors weigh in favor of exercising personal jurisdiction over Defendant in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* (quotations and citations omitted).  The purposes of the FDCPA, a federal statute, are:

> to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).  Additionally, 15 U.S.C. § 1692k(d) states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . ."  Plaintiff alleges that Defendant violated nine provisions of the FDCPA. *Motion* [#23] at 2-3.  Therefore, exercising personal jurisdiction over Defendant in the forum where Plaintiff resides and was allegedly injured furthers the policy interests of all states. Accordingly, the Court recommends finding that exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over Defendant.

## B.    Default Judgment

As indicated above, entry of default pursuant to Fed. R. Civ. P. 55(a) was proper because Defendant has failed to respond to Plaintiff's Complaint.  The Court must now decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co.*, 2008 WL 793606, at *1 (citations omitted).  "'[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as

to his rights.  The default judgment remedy serves as such a protection.'"  *In re Rains*, 946 F.2d 731, 733-34 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

"[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court."  *Greenwich*, 2008 WL 793606, at *2 (quoting *Cablevisions*, 141 F. Supp. 2d at 281).  Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate. *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation.  The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Amended Complaint in this matter to be true.  *Id.* at *1 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Id.*

### 1.    Plaintiff's FDCPA Claims

All of Plaintiff's claims against Defendant in this case arise pursuant to the FDCPA. *See Motion* [#23] at 2-3; *see generally Am. Compl.* [#7].  The FDCPA is designed to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Specifically, Plaintiff alleges that Defendant's debt collection practices violated 15 U.S.C. §§ 1692b(2), 1692d(6), 1692e, 1692e(2)(A), 1692e(5), 1692e(7), 1692e(10), 1692e(11), and 1692(f).  *Motion* [#23] at 2-3.  Accepting the well-pled allegations in the

Amended Complaint as true and for the reasons stated below, the Court recommends that default judgment be entered against Defendant on Plaintiff's claims for violations of 15 U.S.C. §§ 1692d (6), 1692e(2)(A), 1692e(10), and 1692e(11).

### a.    15 U.S.C. § 1692b(2)

15 U.S.C. § 1692b(2) prohibits debt collectors from "stat[ing] that [a] consumer owes any debt" when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer.  15 U.S.C. § 1692b(2).  Under the FDCPA, "location information" is defined as "a consumer's place of [abode] and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7). "'[C]ommunication' is defined as the 'conveying of information regarding a debt directly or indirectly to any person through any medium.'"  15 U.S.C. § 1692a(2).  Therefore, phone calls or voicemail messages qualify as "communications" within the meaning of the FDCPA. *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011); *see, e.g.*, *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035 (N.D. Ill. 2008) ("The FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors harassing conduct. . . . [Therefore, Defendant's] twenty-one phone calls to Plaintiff constitute 'communications' under the statute.").

Plaintiff alleges that in September 2012, Defendant called Plaintiff's stepfather and informed him that Plaintiff owed the debt.  *Am. Compl.* [#7] at 9.  Plaintiff alleges her stepfather informed her of the contents of the conversation.  *Id.*  Plaintiff further alleges that Defendant called her ex-boyfriend's parent(s) and also informed them that Plaintiff owed the debt.  *Id.*  Plaintiff alleges that her ex-boyfriend's parents informed her of the contents

of the telephone conversation. *Id.* at 10.   While Plaintiff alleges that Defendant communicated with these individuals and revealed her debt, she fails to allege that Defendant's communications with them were for the "purpose of acquiring location information." *See Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019, 2013 WL 2295449, at *3 (D. Colo. May 24, 2013) (holding plaintiff failed to state a violation of § 1692b(2) where she did not allege communications were for the "purpose of acquiring location information"); *Ayala v. Creditors Specialty Serv., Inc.*, No. 1:11-cv-01469-LJO-JLT, 2012 WL 5198482, at *5 (E.D. Cal. Oct. 19, 2012) (noting that communication must be to "acquire location information").   Therefore, Plaintiff does not clearly state a violation of § 1692b(2).   Accordingly, the Court **recommends** that default judgment should not be entered against Defendant on Plaintiff's claim for a violation of 15 U.S.C. § 1692d(6).

### b.    15 U.S.C. § 1692d(6)

Section 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (6) Except as provided in section 1692b of this title, *the placement of telephone calls without meaningful disclosure of the caller's identity.*

15 U.S.C. § 1692d(6) (emphasis added).

"[M]eaningful disclosure of the caller's identity requires disclosing the debt collection company's name." *Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105-1106 (D. Colo. 2012); *see Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011) (holding the defendant violated § 1692d(6) where the plaintiff alleged that the defendant's representative neither identified himself as a debt collector nor articulated that

the purpose of the voicemail message was to collect a debt); *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1074 (E.D. Cal. 2007) ("[M]eaningful disclosure requir[es] that the caller [s]tate his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call.").

Plaintiff alleges that Defendant's representative first called in September 2012 to attempt to collect the debt. *Am. Compl.* [#7] at 4. She alleges that the representative left a voicemail message that failed to state: (1) Defendant's identity;[4] (2) Defendant is a debt collector; (3) Defendant was attempting to collect a debt; or (4) that any information obtained would be used for this purpose. *Id.* She alleges that instead, Defendant's representative stated that Defendant was calling to inform Plaintiff regarding a civil matter that would soon be forwarded to Plaintiff and provided Defendant's telephone number and a putative docket number. *Id.* Because Plaintiff alleges that Defendant's representative failed to disclose the debt collection company's name during the initial voicemail or that Defendant was attempting to collecting a debt, she sufficiently alleges Defendant's representative's failure to meaningfully disclose Defendant's identity. Accordingly, the Court **recommends** that default judgment should be entered against Defendant on Plaintiff's claim for a violation of 15 U.S.C. § 1692d(6).

### c.    15 U.S.C. § 1692e(2)(A)

---

[4] Plaintiff alleges that "[a]t no time during the course of the aforesaid voicemail message did [Defendant's] duly authorized representative provide Plaintiff with information relative to [Defendant's] identity. Plaintiff ascertained the aforesaid voicemail message was left by [Defendant] as the telephone number [Defendant's representative] informed Plaintiff to contact to return [the] telephone call was [Defendant's] telephone number." *Am. Compl.* [#7] at 4. The Court interprets these statements to allege that Defendant's representative did not disclose Defendant's company name in the voicemail message.

15 U.S.C. § 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff asserts five claims against Defendant under § 1692e. *Motion* [#23] at 2-3.  15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."  Plaintiff alleges that: (1) Defendant's representative made a representation to Plaintiff that Defendant had filed a lawsuit against her, which was untrue, *Am. Compl.* [#7] at 5; (2) Defendant had no intention or authority to file a lawsuit against Plaintiff for the debt, *id.*; (3) Defendant's representative told Plaintiff that she would "lose her commercial driver's license" if she did not pay the debt, *id.* at 6; (4) Defendant had neither the power nor the authority to revoke Plaintiff's license, *id.*; (5) Defendant's representative told Plaintiff that she would face criminal charges if she did not pay the debt,  *id.*; (6) Plaintiff has not engaged in any criminal conduct with respect to the debt, *id.* at 7.; (7)  Defendant's representative told Plaintiff that her stepfather would pay the debt on her behalf and to call him for his debit card information, which would be used to pay the debt,  *id.* at 8; (8) Plaintiff's stepfather told her that he never represented to Defendant that he would pay the debt on her behalf,  *id.*; and (9) Defendant's representative told Plaintiff's stepfather and ex-boyfriend's parents that if the debt were not paid, Plaintiff would lose her commercial driver's license and could be charged with a crime, which was untrue. *Id.* at 9-10.  Plaintiff argues that all of these representations were false representations of the character or legal status of the debt.  *Id.* at 5-10.

Because the Court deems the well-pleaded facts of the Amended Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(2)(A), on the basis that Defendant falsely represented the "character, amount, or

legal status of Plaintiff's debt." Plaintiff's allegation that Defendant's representative stated Defendant had filed a lawsuit against her, which was untrue, falsely represented the current legal status of her debt. Because Defendant's representative allegedly stated that a lawsuit had been filed against Plaintiff regarding the debt and misrepresented the consequences of nonpayment, Plaintiff sufficiently alleges that Defendant misrepresented the "character and legal status" of Plaintiff's debt. Accordingly, the Court **recommends** that default judgment be entered against Defendant on Plaintiff's claim for violation of 15 U.S.C. § 1692e(2)(A).

### d.    15 U.S.C. § 1692e(5)

15 U.S.C. 1692e(5) prohibits a defendant from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5); *see Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725, 729-731 (D. Md. 2011) (holding that the defendant's filing of lawsuits against the plaintiffs without legal entitlement constituted a "threat to take . . . action that cannot legally be taken" in violation of § 1692e(5)).

Plaintiff alleges that Defendant's representative stated that Defendant had filed a lawsuit against Plaintiff regarding the debt, which was effectively a threat. *Am. Compl.* [#7] at 5. Plaintiff alleges that "[u]pon information and belief, at the time of making the aforementioned threat," Defendant had not filed, nor intended to file, a lawsuit against Plaintiff for the debt. *Id.* Plaintiff further alleges that Defendant lacked the authority to file a lawsuit against Plaintiff for the debt. *Id.* Plaintiff alleges that Defendant's representative threatened to revoke her commercial driver's license if she did not pay the debt. *Id.* at 6-7.

Plaintiff contends that the undisputed facts demonstrate a violation of 15 U.S.C. § 1692e(5).   However, Plaintiff's allegations are insufficient.   Plaintiff's allegation that Defendant "has no authority to file a lawsuit against [her] for the [d]ebt" is a conclusory statement, not an allegation of fact, and Plaintiff fails to provide sufficient allegations demonstrating that a lawsuit could not be filed against her. *Id.* at 5. *See Davis v. Law Office of D. Scott Carruthers*, No. 10-cv-00414-RPM-KLM, 2011 WL 4550177, at *5 (D. Colo. Sept. 9, 2011) (holding that the plaintiff's § 1692e(5) claim failed where he did not allege facts to show that defendant took action it could not legally take).   Therefore, Plaintiff fails to sufficiently allege that Defendant threatened to take action that "cannot legally be taken."

Furthermore, Plaintiff contends that "[u]pon information and belief," the undisputed facts demonstrate that Defendant never intended to file a lawsuit against Plaintiff. *Id.* at 5. She alleges that at the time of the first voicemail Defendant had not filed a lawsuit against Plaintiff. *Id.* at 5.   However, Plaintiff never alleges that Defendant did not  intend to file a lawsuit in the future.   Allegations that Defendant "had not filed" a lawsuit in the past are insufficient.   Here, Plaintiff does not allege facts supporting the conclusion that Defendant did not intend to sue at a later date.

Therefore, Plaintiff fails to allege that Defendant threatened to take an action that it could not legally take or that it did not intend to take, in violation of § 1692e(5). *See Davis*, 2011 WL 4550177 (D. Colo. Sept. 9, 2011) (holding that the plaintiff's § 1692e(5) claim failed where he did not allege facts to show that defendant did not intend to file a lawsuit).   Accordingly, Plaintiff insufficiently alleges a § 1692e(5) violation.   The Court **recommends** that default judgment should not be entered against Defendant on Plaintiff's

claim for violation of 15 U.S.C. § 1692e(5).

### e.   15 U.S.C. § 1692e(7)

15 U.S.C. 1692e(7) prohibits the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. 1692e(7).   Plaintiff alleges that, during telephone conversations, Defendant's representative told Plaintiff if she did not pay the debt she would face criminal charges. *Am. Compl.* [#7] at 6.  Plaintiff contends that these representations were false, implied that she committed a crime, and were made to disgrace Plaintiff.  *Id.* at 7.  Plaintiff further alleges that Defendant's representatives made the same statements on the phone with Plaintiff's stepfather and Plaintiff's ex-boyfriend's parents, which were also attempts to disgrace Plaintiff.  *Id.* at 7, 9-10.

First, Plaintiff alleges no facts to support the conclusion that Defendant acted for the purpose of disgracing Plaintiff.  Second, Plaintiff alleges Defendant's representative stated that she would face criminal charges "if" she did not pay the debt.  This contingent language does not imply that Plaintiff already committed a crime, but rather that if she failed to pay the debt, she would commit one.  While this statement may not be true, § 1692e(7) prohibits false representations that the consumer "committed" any crime.  Finally, Plaintiff does not allege any facts regarding whether she would or would not face criminal charges if the debt were not paid, and the Court is disinclined to speculate about the myriad consequences that could arise from failure to pay a debt.  Therefore, Plaintiff fails to sufficiently allege that Defendant's representative's statement that Plaintiff would commit a crime was "false."  Plaintiff conclusorily alleges that she "has not engaged in criminal conduct with respect to the [d]ebt," but does not allege facts supporting that conclusion.

Therefore, Plaintiff does not sufficiently allege facts supporting the conclusion that Defendant's statement that Plaintiff could be charged criminally was made in order to disgrace her, implied that she committed a crime, or was false.

### f.    15 U.S.C. § 1692e(10)

15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Because the Court deems the well-pled facts of the Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(10). As stated above, Plaintiff alleges that Defendant's representative stated that Defendant filed a lawsuit against her, which was not true. *Am. Compl.* [#7] at 5. Accepting this allegation as true, Defendant used a false representation of a filed lawsuit to attempt to collect the debt. Defendant allegedly misrepresented the legal status of Plaintiff's debt by first contending that it had filed a lawsuit against her when it had not. *See Kuberski v. Cred X Debt Recovery, LLC, Order for Entry of Judgment*, No. 11-cv-03247-RPM-KLM, 2012 WL 2936421, at *10 (D. Colo. Jul. 19, 2012)("Defendant misrepresented the legal status of Plaintiff's debt by contending that Plaintiff owed a debt, when Plaintiff's debt was already 'PAID IN FULL.'"). Furthermore, Defendant's representative allegedly stated that Plaintiff's stepfather had agreed to pay the debt, which he had not. Therefore, Plaintiff sufficiently alleges that Defendant conveyed a false sense of urgency in telephone calls to Plaintiff to compel her to communicate with Defendant. Plaintiff sufficiently alleges that Defendant used false representations and deceptive practices in connection with collection of Plaintiff's debt. Accordingly, the Court recommends that default judgment be entered against Defendant on Plaintiff's claim for violation of 15 U.S.C. § 1692e(10).

### g.     15 U.S.C. § 1692e(11)

15 U.S.C. § 1692e(11) prohibits

> [t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

Because the Court deems the well-pleaded facts of the Complaint to be true, the Court finds that Plaintiff has established that Defendant violated 15 U.S.C. § 1692e(11), on the basis that Defendant's representative failed to notify Plaintiff during the initial telephone call that Defendant was a debt collector or that information obtained during the communication would be used for the purpose of collecting the debt. *Am. Compl.* [#7] at 4. More specifically, Plaintiff alleges that "[a]t no time during the course of the aforesaid voicemail message did [Defendant] state it was a debt collector, attempting to collect a debt[, or] that any information obtained would be used for that purpose." *Id.*

While it is alleged that Defendant's representative stated Defendant was calling regarding a civil matter, provided its telephone number, and stated that Plaintiff or her attorney must return its call, Defendant's representative did not reveal that Defendant was attempting to collect a debt or that information obtained would be used for that purpose. *Id.* at 4. Because the initial communication failed to disclose that Defendant was attempting to collect a debt, the voicemail message violated 15 U.S.C. § 1692e(11). Accordingly, default judgment should be entered against Defendant on this claim.

### h.     15 U.S.C. § 1692f

1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f. Plaintiff alleges that her request that Defendant provide a physical mailing address (as opposed to a P.O. Box address) was denied. *Id.* at 8. She contends that this refusal prevented her from sending correspondence to Defendant via certified mail, which was unfair or unconscionable. *Id.* at 8. However, Plaintiff never alleges "how" this refusal to provide a physical mailing address was "unfair [or] unconscionable" or "why" the P.O. Box address was insufficient. *See Berger v. Northland Group, Inc.*, 886 F. Supp. 2d 59 (D. Mass. 2012) (holding that Defendant's action did not violate the FDCPA where Plaintiff offered no allegation as to why the activity was unconscionable). Because it is not clear from Plaintiff's Complaint how Defendant's actions were allegedly unfair or unconscionable, Plaintiff insufficiently alleges a § 1692f claim.

### 2. Damages

In addition to finding that Plaintiff has a legal basis for relief, default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). A default judgment for money damages must be supported by proof. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence. *See id.*

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Further, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily are not." *Dundee Cement Co. v.*

*Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  In her Motion, Plaintiff requests entry of default judgment in the amounts of $2,000.00 in actual damages, $1,000.00 in statutory damages, and $3,641.50 in attorney's fees and costs.  *Motion* [#23] at 7-8 .  The Court addresses each in turn.

### a.    Actual Damages

The FDCPA allows damages in an amount equal to the sum of any actual damage sustained by a person as a result of a debt collector's failure to comply with a provision. 15 U.S.C. § 1692k(a).  "If [the] defendant does not contest the amount prayed for in the complaint by failing to answer and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing."  *United States v. Craighead*, 176 F.App'x 922, 925 (10th Cir. 2006) (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998)(internal quotations omitted).

A plaintiff who establishes a violation of the FDCPA may recover damages for personal humiliation, embarrassment, mental anguish, or emotional distress.  15 U.S.C. § 1692k(a)(1).  Plaintiff is required to "[allege her] injury in reasonable detail and not rely on conclusory statements." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir.2013) (quoting *Bagby v. Experian Information Solutions, Inc.*, 162 F.App'x 600, 605 (7th Cir.2006) (internal quotation marks omitted)).  "An injured person's [allegations] alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." Id. at 1183 (quoting *Bach v. First Union Nat. Bank*, 149 F.App'x

-27-

354, 361 (6th Cir.2005) (emphasis in original).

Here, Plaintiff asks for actual damages in the amount of $2,000.00 for emotional distress, personal humiliation, embarrassment, sleeplessness, depression, mental anguish, and emotional stress sustained as a result of Defendant's conduct. *Motion* [#23] at 3, 5. She alleges that as a result of Defendant's conduct, she has lost weight, experienced decreased appetite, sleeplessness, stress, and deterioration of work and familial relationships. *Ex. A*, *Aff. of Pl.* [#23-1] at 2. Accepting Plaintiff's factual allegations as true, the Court determines that Plaintiff has demonstrated that she is entitled to actual damages in the amount of $2,000.00. *See Stevenson v. TRW*, 987 F.2d 288 (5th Cir. 1993) (awarding $30,000 in mental anguish and embarrassment damages); *Bryant v. TRW Inc.*, 689 F.2d 72 (6th Cir. 1982) (awarding $8,000 for embarrassment and humiliation); *Reichers v. Delaware Asset Mgmt, LLC*, No. 13-cv-02171-CMA-CBS, 2013 WL 6096136, at *2 (D. Colo. Nov. 20, 2013) (awarding $2,000 in actual damages for emotional distress, humiliation, anxiety, and fear).

### b.    Statutory Damages

The FDCPA sets a statutory maximum amount of damages at $1,000 per proceeding. 15 U.S.C. § 1692k(a)(2)(A); *see also Wright v. Fin. Servs. of Norwalk*, 22 F.3d 647, 650-52 (6th Cir. 1994) (§ 1692k(a)(2)(A) limits plaintiff's additional damages beyond actual damages to $1,000 "per proceeding"); *Harper v. Better Bus. Servs. Inc.*, 961 F.2d 1562, 1563 (11th Cir. 1992). Thus, regardless of whether Plaintiff establishes a single violation or several violations of the FDCPA, the amount of statutory damages remains the same. *See Harper*, 961 F.2d at 1563. "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its

discretion to determine how much to award, up to the $1,000.00 ceiling." *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) (citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)).  Thus, a determination that Defendant has committed one violation of the FDCPA is sufficient for the Court to find in favor of Plaintiff as to statutory damages. *Santacruz v. Stanley & Assoc., LLC*, 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *7 (D. Colo. Mar. 17, 2011).

Pursuant to 15 U.S.C. § 1692k(b)(1), in determining the amount of statutory damages in an FDCPA action, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578 (2010) (the court "must" consider the provisions of section 1692k(b) in awarding statutory "additional damages"); *Jackson v. Diversified Collection Servs., Inc.*, No. 09-cv-00680-WDM-BNB, 2010 WL 1931013 (D. Colo. May 13, 2010) (evaluating a request for increased statutory damages pursuant to § 1692k(b)(1)). As stated herein, the Court finds that Defendant violated four provisions of the FDCPA.  In light of these violations and Defendant's failure to respond to Plaintiff's Amended Complaint, the Court recommends finding that the nature and willfulness of Defendant's noncompliance with the FDCPA justifies an award of $1,000 in statutory damages against Defendant.[5]

_____

[5] Plaintiff alleges that Defendant's representative initially called Plaintiff, leaving a voicemail message to return the call. *Am. Compl.* [#7] at 4.  This was followed by at least five different phone conversations during the month of September with Plaintiff, Plaintiff's stepfather, and Plaintiff's ex-boyfriend's parents. *Id.* at 4-9.  The Court finds that Defendant's misrepresentations not only to Plaintiff but to her stepfather and ex-boyfriend's parents demonstrate persistent and intentional conduct.

### c.   Attorneys' Fees and Costs

The FDCPA prescribes that a successful party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."   15 U.S.C. § 1692k(a)(3).   To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983).   *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002).   A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate.   *Hensley*, 641 U.S. at 433.   To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.   *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation marks omitted); *id.* at 1251 ("The district court is not bound by the opinions of the parties regarding the reasonableness of the time they spent on the litigation.").   Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed.   *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."   *Case*, 157 F.3d at 1250.   "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice.   *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).

The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Here, Plaintiff requests $3,129.00 in attorneys' fees. *Motion* [#23] at 7. Plaintiff alleges that she has incurred that amount in attorneys' fees to date. Plaintiff's attorney has prepared and filed: (1) a fourteen-page "Complaint;" and (2) a nine-page "Motion for Default Judgment" with a four-page "Summary of Attorney's Fees." *See Am. Compl.* [#7]; *Motion* [# 23]. In these filings, Plaintiff asserts that Defendant violated nine provisions of the FDCPA and supports her claims by citing the relevant FDCPA provisions. *See id.* Therefore, in light of: (1) the straight-forward nature of the case; (2) the fact that Plaintiff's claims are based on the FDCPA; and (3) Defendant's failure to respond to any of Plaintiff's filings, the Court recommends awarding $3,129.00 of the Plaintiff's requested attorneys' fees. *Ramos*, 713 F.2d at 554. The Court recommends the lodestar calculation of $3,129.00 after determining that $395.00 (attorney), $340.00 (attorney), and $115.00 (paralegal) are reasonable hourly billing rates, and six and seven hours are a reasonable number of hours expended, respectively.

Additionally, Plaintiff requests $512.50 in costs. *Motion* [#23] at 7. However, costs are determined by the clerk based on the filing of a Bill of Costs after judgment. *Kuberski*, 2012 WL 2936421, at *1. Therefore, the Court **recommends** that costs be ascertained following Plaintiff's filing of a Bill of Costs.

### III.  RECOMMENDATION

Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#23] be **GRANTED in part**, and that default judgment be entered in favor of Plaintiff and against Defendant in the amount of $2,000.00 in actual damages, $1,000.00 in statutory damages, and $3,129.00 in attorneys' fees, for a total judgment of $6,129.00, with costs to be determined.

Pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. CDOC*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 17, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge